UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

H.DAYA INTERNATIONAL CO., LTD.,

                      Plaintiff,

    – against –

HABIB ARAZI and PRINCESS, INC.,

                      Defendants.

**OPINION AND ORDER**

16 CIV. 09880 (ER)

Ramos, D.J.:

      H.Daya International Co., LTD., ("H.Daya"), a seller of clothing apparel, brings this action against Habib Arazi ("Arazi") and Princess, Inc., ("Princess," and together with Arazi "Defendants"), buyers of clothing apparel, for trade price under U.C.C. § 2-709(1)(a), breach of contract, account stated, and unjust enrichment. Doc. 1, 7–12. H.Daya claims that it sold clothing apparel to Arazi and Princess for $616,115.93 and that they only paid a fraction of this sum. *Id*. H.Daya now moves for summary judgment. Doc. 31. For the reasons set forth below, the motion is GRANTED.

**I.    Background**

      Between July 31, 2003, and December 22, 2010, Princess operated as a domestic business corporation. Doc. 33-20, 1. At the time of its dissolution in 2010, Arazi served as the Chief Executive Officer. *Id*. Despite its dissolution, Arazi continued to do business as Princess, Inc. In his affidavit, Arazi acknowledges that Princess ordered apparel from H.Daya, a seller based in Hong Kong. Doc. 36, ¶ 7. H.Daya accepted the order, as evidenced by six invoices

generated between October 21, 2014, and April 21, 2015.[1] H.Daya transmitted the invoices to Arazi "at or near the time of each sales contract." Doc. 34, ¶ 9.

H.Daya and Arazi communicated extensively about these invoices through the WhatsApp messaging application. *Id.* at ¶ 19. On 26 different occasions, between June 27 and December 5, 2015, H.Daya requested payment through WhatsApp messages.[2] On at least 16 different instances, Arazi acknowledged this debt in WhatsApp messages.[3] However, during this entire period, Defendants made no payment to H.Daya.

On December 10, 2015, Arazi met H.Daya's representatives in H.Daya's office in China, Doc. 34, ¶ 24, and signed a personal guarantee to "confirm that as on today we owe to H.Daya International Co LTD, $629,618.27" for six invoices—140612, 140613, 140614, GZ140339, GZ140491, and GZ150022—originally due sometime between February 18, 2015, and June 23, 2015. Doc. 34-16. The document provided that Arazi "will pay" the outstanding invoices between January 15, 2016, and April 15, 2016. *Id.*

Arazi failed to make any of the scheduled payments. Between January 15, 2016, and February 27, 2016, in WhatsApp messages sent to Arazi, H.Daya demanded payment on at least five occasions. Doc. 34-15, 31 (1/15/2016), 31 (1/18/2016), 33 (1/22/2016), 34 (1/27/2016), 35

---

[1] Doc. 34-8, 8 (Invoice Number GZ140339, dated October 21, 2014, for $149,928.68); Doc. 34-3, 3 (Invoice Number 140613, dated October 23, 2014, for $80,754.20); Doc. 34-5, 3 (Invoice Number 140614, dated October 23, 2014, for $83,172); Doc. 34-1, 4 (Invoice Number 140612, dated November 6, 2014, for $98.933.40); Doc. 34-10, 5 (Invoice Number GZ140491, dated February 23, 2015, for $98,151.45); Doc. 34-12, 6 (Invoice Number GZ150022, dated April 21, 2015, for $198.145.80).

[2] Doc. 34-15, 2, (5/27/2015), 4 (6/2/2015), 8 (6/5/2015), 10 (6/9/2015), 10 (6/13/2015), 11 (6/15/2015), 12 (6/16/2015), 12 (6/19/2015), 12 (6/20/2015), 12 (6/21/2015), 13 (6/22/2015), 13 (6/23/2015), 16 (7/10/2015), 17 (7/11/2015), 17 (7/24/2015), 18 (8/1/2015), 20 (8/24/2015), 22 (9/19/2015), 22 (10/3/2015), 25 (10/5/2015), 26 (10/9/2015), 27 (10/12/2015), 28 (10/15/2015), 28 (10/16/2015), 29 (11/11/2015), 29 (12/5/2016).

[3] *Id.* at 1 (4/23/2015), 2 (5/27/2015), 4 (6/2/2015), 13 (6/21/2015), 13 (6/22/2015), 16 (7/10/2015), 17 (7/25/2015), 18 (8/1/2015), 19 (8/10/2015), 20 (9/17/2015), 21 (9/19/2015), 22 (10/3/2015), 24 (10/3/2015), 26 (10/9/2015), 28 (10/15/2015), 29 (12/6/2015).

(2/27/2016). And, in WhatsApp messages sent to H.Daya, Arazi promised to make the payments on three different days. *Id.* at 32 (1/18/2015), 33 (1/25/2015), 34 (2/12/2016).

Princess Apparel Group, Inc., "Arazi's other company," Doc. 34, ¶ 28, paid H.Daya $11,990 on March 2, 2016, Doc. 34-17, and $3,990 on October 26, 2016, Doc. 34-18. Each transfer included "hand-written requests from Arazi to credit the account of 'Princess, Inc.'" Doc. 33-1, ¶ 26. After these payments, H.Daya requested, in WhatsApp messages, the remaining payments on four different dates. Doc. 34-15, 40 (5/3/2016), 41 (5/15/2016), 41 (7/3/2016), 43 (7/12/2016). Arazi again acknowledged the debt on July 12, 2016, *id.* at 43, and August 1, 2016, *id.* at 44. On September 27, 2016, Arazi responded via WhatsApp message to H.Daya, "I will pay you guys." *Id.* at 49.

On December 22, 2016, H.Daya filed the instant complaint against Arazi and Princess, Inc., for trade price under U.C.C. § 2-709(1)(a), breach of contract, account stated, and unjust enrichment. Doc. 1, 7–12. For the trade price claims and breach of contract claims, it asks the Court to hold Arazi and Princess jointly and severally liable for "the principal amount of $616,115.93, together with lost profit, consequential and incidental damages, interest, costs and attorneys' fees, the amount of which will be assessed at trial, but no less than $13,502 as of December 12, 2015." *Id.* at 11. For the account stated claims, it asks the Court to hold Arazi and Princess jointly and severally liable for "$629,618.27, together with interest, costs and attorneys' fees, the amount of which will be assessed at trial." *Id.* At no point prior to the filing of the complaint did Defendants ever disclaim their obligation to pay for the merchandise delivered to them and accepted and subsequently resold by them. On April 2, 2018, H.Daya moved for summary judgment. Doc. 31.

**II.    Discussion**[4]

The Court grants H.Daya's motion for summary judgment. Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F.Supp.2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F.Supp.2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (citing *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)). However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise. *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995). To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."

---

[4] The Court has diversity jurisdiction over this case, pursuant to 28 U.S.C. § 1332, because complete diversity exists between the parties and because the matter in controversy exceeds $75,000.

*Senno*, 812 F.Supp.2d at 467–68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

H.Daya brings three claims under New York law[5] and a fourth claim, in the alternative, for unjust enrichment. The Court does not discuss that fourth claim because it grants H.Daya relief on its first three claims.

**A.      Trade Price Claim**

First, H.Daya raises a goods sold and delivered claim for trade price. "To recover on a claim for goods sold and delivered, a plaintiff must show that: (1) it had a contract with the buyer; (2) the buyer failed to pay the purchase price; and (3) the buyer accepted the goods." *Kasper Glob. Collection & Brokers, Inc. v. Glob. Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 571 (S.D.N.Y. 2013). *See also* N.Y. U.C.C. Law § 2-709(1)(a) ("When the buyer fails to pay the price as it becomes due the seller may recover, together with any incidental damages under the next section, the price of goods accepted . . . ."). For the purposes of this claim, a buyer accepts goods when the buyer "(1) has a reasonable opportunity to inspect goods and 'signifies to the seller that the goods are conforming . . .'; (2) does not effectively reject the goods; *or* (3) 'does any act inconsistent with the seller's ownership.'" *Movado Grp., Inc. v. Caseiko Trading Co.*, 912 F. Supp. 2d 109, 114 (S.D.N.Y. 2012) (citing N.Y. U.C.C § 2–606(a)–(c)).

The foregoing elements are readily established by the admissible evidence here. H.Daya had a contract with Defendants. Generally, "a contract for the sale of goods for the price of $500 or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is

---

[5] "The parties agree, and we assume, that New York law governs the substantive state law claims advanced by" H.Daya. *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986).

sought . . . ." N.Y. U.C.C. Law § 2-201(1). An exception exists for merchants: When merchants make an oral contract, they can enforce it as long as one of the merchants makes a "writing in confirmation of the contract" in a "reasonable time" and the other merchant did not object to the confirmation within ten days. N.Y. U.C.C. Law § 2-201(2).

If a merchant writes an invoice "on the letterhead of the seller" and adds the "names and addresses of the buyer and the seller; the date thereof; the payment terms, the price of the goods; a description of the goods; the amount of goods and the total price of the sale," the "invoice constitute[s] 'a writing in confirmation of the contract' pursuant to subdivision (2), and thus satisfie[s] the formal requirements of subdivision (1)." *B & R Textile Corp. v. Domino Textiles Inc.*, 430 N.Y.S.2d 89, 90 (N.Y. App. Div. 1980).

H.Daya generated invoices on October 21, 2014, October 23, 2014, October 23, 2014, November 6, 2014, February 23, 2015, and April 21, 2015. Those six invoices appear on H.Daya's letterhead and include the parties' names and addresses, the payment terms, detailed descriptions of the goods, and the total amount of the sale. H.Daya transmitted the invoices to Arazi "at or near the time of each sales contract." Doc. 34, ¶ 9. The parties are both merchants, Arazi did not object to the invoices, and Arazi does not claim that H.Daya sent him the invoices after an unreasonable amount of time.

H.Daya alleges that Arazi has failed to pay the invoices in full, Doc. 34, ¶ 19, and Arazi has plainly acknowledged his failure to pay the full purchase price on numerous occasions, *see, e.g.*, Doc. 34-16. Similarly, H.Daya claims, and Arazi admits, that Arazi accepted and sold the goods. Doc. 34, ¶ 19 (H.Daya's representative deposing that "Arazi and Princess accepted the Goods, and, I believe they have since resold them."); Doc. 33-19, 9 (Arazi's counsel answering "Yes," during a conference with the Court, to the Court's statement "he accepted and sold

6

them."). As a result, the Court grants H.Daya's motion for summary judgment on its goods sold and delivered claim for trade price because the parties do not dispute that a contract existed between the parties, that Arazi accepted the goods, and that Arazi failed to pay the contract price.

Defendants feebly counter by asserting that "Plaintiff does not even allege that it attempted to resell any of these goods and, as such, the claim is not ripe and cannot be decided in favor of Plaintiff." Doc. 35, 6. To support this argument, Defendants cite N.Y. U.C.C. Law § 2-709(1)(b). Doc. 35, 6. The Court does not find this argument convincing. H.Daya brings its claim under Section 2-709(1)(a). Doc. 1, 7. Section 2-709(1)(a) covers "goods accepted or of conforming goods lost or damaged within a commercially reasonable time after risk of their loss has passed to the buyer." N.Y. U.C.C. Law § 2-709(1)(a). Section 2-709(1)(b), the section cited by Defendants, applies when the buyer rejected the goods and covers "goods identified to the contract if the seller is unable after reasonable effort to resell them at a reasonable price or the circumstances reasonably indicate that such effort will be unavailing." N.Y. U.C.C. Law § 2-709. *See also* N.Y. U.C.C. Law § 2-709, Official Comment 2 ("The action for the price is now generally limited to those cases where resale of the goods is impracticable except where the buyer has accepted the goods or where they have been destroyed after risk of loss has passed to the buyer."). Arazi, as his counsel conceded in open court, accepted and then sold the goods. Doc. 33-19, 9. As a result, Section 2-709(1)(b) and *Creations By Roselynn v. Costanza*, 734 N.Y.S.2d 803, 804 (N.Y. App. Div. 2001), a case in which the buyer rejected the goods, do not apply here. It would be farcical to come to an alternative conclusion where Defendants accepted *and resold* the sellers goods without paying the purchase price. Because Arazi accepted the goods, H.Daya need not claim that it attempted to resell them and the Court grants summary judgment on this claim.

7

**B.     Breach of Contract Claim**

Second, H.Daya raises a breach of contract claim. "To state a claim in federal court for breach of contract under New York law, a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). As discussed above, H.Daya provides evidence that contracts existed, that it performed, that Arazi failed to pay, and that it suffered damages as a result.

Arazi does not refute this evidence. Instead, he argues that "Summary Judgment is not warranted because completion of the contract was impossible." Doc. 35, 4. Completion was impossible, Defendants claim, because the contested orders "were placed at the behest of a third party known as 'National Stores,'" and because "National Stores cancelled the order and refused to provide payment to Defendants." *Id.* at 5. This argument is unavailing.

Under New York law, "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible" and the impossibility was "produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Kel Kim Corp. v. Cent. Markets, Inc.*, 519 N.E.2d 295, 296 (N.Y. 1987). As H.Daya argues, Doc. 38, 17, Arazi has produced no evidence to suggest that it could not have guarded against the risk of National Stores' cancellation. *Cf. 407 E. 61st Garage, Inc. v. Savoy Fifth Ave. Corp.*, 244 N.E.2d 37, 41 (N.Y. 1968) ("[I]n view of its admittedly contemporaneous financial difficulties, [defendant] could [and] should have insisted that the agreement provide for the anticipated contingency of economic hardship."). As a result, the Court denies Arazi's only defense and grants H.Daya's motion for summary judgment on its contract claim.

### C. Accounted Stated Claim

Third, H.Daya moves for summary judgment on its account stated claim. This motion is granted. Under New York law, "An account stated is an agreement between parties to an account based upon prior transactions between them with respect to the correctness of the account items and balance due." *Jim-Mar Corp. v. Aquatic Const., Ltd.*, 600 N.Y.S.2d 790, 791 (N.Y. App. Div. 1993). "In the case of existing indebtedness, the agreement may be implied as well as express." *Cach, LLC v. Aspir*, 29 N.Y.S.3d 36, 38 (N.Y. App. Div. 2016). "An agreement may be implied where a defendant retains bills without objecting to them within a reasonable period of time, or makes partial payment on the account." *Am. Exp. Centurion Bank v. Cutler*, 916 N.Y.S.2d 622, 623 (N.Y. App. Div. 2011).

An account stated exists here. H.Daya generated six invoices between October 21, 2014, and April 21, 2015. H.Daya transmitted the invoices to Arazi "at or near the time of each sales contract." Doc. 34, ¶ 9. On at least 19 occasions, Arazi acknowledged the debt in communications with H.Daya. Importantly, on December 10, 2015, Arazi affirmed Defendants' indebtedness by personal guarantee wherein he asserted that he "here by [sic] confirm[ed] that as on today we owe to H.Daya International Co LTD, $629,618.27." Doc. 34-16. Subsequently, on March 2 and October 26, 2016, Defendants paid a total of $15,980 to H.Daya through a corporate entity apparently controlled by Arazi. These actions establish an agreement as to the correctness of the account items and balance due. Because an agreement exists, Arazi must adhere to it.

Arazi asserts that summary judgment is not warranted because "Arazi verbally informed Plaintiff that it would not pay the stated amount." Doc. 35, 6. Defendants cite to Arazi's affidavit to support this point. *Id.* In the relevant portion of Arazi's affidavit, he deposes as

9

follows: "In the instant case, I verbally informed Plaintiff that we would not pay the stated amount because of the cancellation by National S[tores]." Doc. 36, ¶ 11. Defendants have provided no reason for the Court to conclude that Arazi made this undated statement in a reasonable time period or that this statement qualifies as an objection to the account stated. As a result, the Court rejects Arazi's counterargument and grants H.Daya's motion for summary judgment on its account stated claim.

**D.     Liability**

The Court finds Defendants jointly and severally liable for all three claims.[6] Between October 21, 2014, and April 21, 2015, Arazi entered into six sales agreements as Princess, Inc. On December 10, 2015, Arazi confirmed Defendants' indebtedness in the amount of $629,618.27. According to uncontested evidence, Princess, Inc., dissolved *in 2010*. Doc. 33-20, 1. Because Arazi "in effect, purported to act on behalf of a corporation which had neither a de jure nor a de facto existence, . . . he is therefore personally responsible for the obligations which he incurred." *Brandes Meat Corp. v. Cromer*, 537 N.Y.S.2d 177, 178 (N.Y. App. Div. 1989). Arazi is liable for $613,638.27 because it equals $629,618.27, the sum the parties agreed to in the December 10, 2016, guarantee, minus $15,980, the total Princess Apparel Group, Inc., paid H.Daya on March 2 and October 26, 2016.

On this award, Defendants are also liable for prejudgment interest because "a plaintiff who prevails on a claim for breach of contract is entitled to prejudgment interest as a matter of right," *U.S. Naval Inst. v. Charter Commc'ns, Inc.*, 936 F.2d 692, 698 (2d Cir. 1991). "Interest shall be computed from the earliest ascertainable date the cause of action existed." N.Y.

---

[6] Defendants' fourth claim for unjust enrichment is presented in the alternative. Because the Court has found for H.Daya on its three primary claims, this claim is dismissed as moot.

C.P.L.R. § 5001(b). Although the cause of action accrued before H.Baya filed its complaint, it only requests interest after this date. Doc. 32, 21.

The Court denies H.Daya's request for attorney's fees because, unlike prejudgment interest, "[t]here is no similar right to an award of attorney's fees on an ordinary claim of breach of contract." *U.S. Naval Inst.*, 936 F.2d at 698.

### III. CONCLUSION

For the reasons set forth above, H.Daya's motion for summary judgement is GRANTED. The Clerk of the Court is respectfully directed to enter judgment in favor of H.Daya International Co., LTD., in the amount of $613,638.27 against Defendants, plus interest at the statutory rate of nine percent from December 22, 2016 until the date of today's judgment. The Clerk of the Court is also respectfully directed to terminate the motion, Doc. 31.

It is SO ORDERED.

Dated:      November 9, 2018
            New York, New York

                                                    _____
                                                    Edgardo Ramos, U.S.D.J